# BOARD OF CHILDREN'S GUARDIANS *v.* JUVENILE COURT.

JUDGMENTS; EXPIRATION OF TERM; JUVENILE COURT; BOARD OF CHILDREN'S
GUARDIANS.

1. A final judgment cannot be set aside by the court which rendered it,
   after the close of the term at which it was rendered, because the
   case has then passed beyond the control of the court.
2. After the expiration of the term of the juvenile court, during which
   the court committed a child found guilty of larceny to the Board of
   Children's Guardians, the court has no power to set aside the com-
   mitment and permit the child to return to its home on probation.

No. 2796.   Submitted April 29, 1915.   Decided May 28, 1915.

In Error to the Juvenile Court of the District of Columbia.
                                *Judgment reversed.*

The Court in the opinion stated the facts as follows:

This is a writ of error to the juvenile court to determine the
question whether that court has the power to remove a child
from the custody of the Board of Children's Guardians before
the expiration of the term of commitment.

On August 28, 1914, an information was filed in the juvenile
court against George Roat, a boy of fourteen, charging him with
petty larceny.   On the same day a plea of guilty was entered
and the boy was committed to the Board of Children's Guardians
during minority.   On February 22, 1915, a half-sister of the
boy filed a petition in the juvenile court asking for his custody
and control.   The court, after hearing and over the protest of
the board, revoked the previous order of commitment, and al-
lowed the boy "to return to the home of the said Mary E. Poole
under probation."   This writ of error followed.

The act of February 13, 1885 (23 Stat. at L. 302, chap. 58),
"For the Protection of Children in the District of Columbia
and for Other Purposes," extended the power of the Humane
Society to the protection of children.   The officers of the society
were empowered to take children who were subjected to cruel
treatment, wilful abuse or neglect, or any child under sixteen
found in a house of ill fame, before the police court, which
might commit such children "to an *orphan asylum or other pub-
lic charitable institution* in the District of Columbia, with the
consent of the constituted authorities of such asylum or insti-
tution, or make such other disposition thereof as now is or may
hereafter be provided by law in cases of vagrant, destitute, or
abandoned children."   The Board of Children's Guardians was
created by the act of July 26, 1892 (27 Stat. at L. 268, chap.
250).   It is there made a body corporate, consisting of nine
members appointed by the judges of the police court and of the
supreme court of the District of Columbia.   The members serve
without compensation, hold office for stated terms, and are re-

movable for cause.    The Board is given power, subject to the approval of the Commissioners of the District, "to employ not more than two agents, at an annual compensation not exceeding $2,400 for the two, and prescribe their duties, and to conclude arrangements with persons or *institutions* for the care of dependent children at such rates as may be agreed upon."    Section 4 of the act provides "that said board shall have the care and supervision of the following classes of children," when not over sixteen years of age: Children committed under said act of February 13, 1885; those destitute of suitable homes and adequate means of earning an honest living; abandoned and immoral children; children of unfit parents found begging on the streets or from door to door; and children known to be vicious or incorrigible, "whenever such children may be *committed to the care of the board* by the police court or the criminal court of the District."    This section further authorizes the Board of Trustees of the Reform School for Boys or the Reform School for Girls (now called training schools), in their discretion, to commit to the board any inmate of their respective institutions "conditionally upon the good behavior of the child so committed."    Further authorization is given by this section to receive children temporarily, "pending investigation or judgment of the court."    Section 5 reads as follows: "That the board shall be *the legal guardians of all children committed to it by the courts,* and shall have full power to board them in private families, to board them in *institutions* willing to receive them, to bind them out or apprentice them, or give them in adoption to foster parents.    Children received from the reform schools shall be placed at work, bound out or apprenticed, and at any time before attaining majority may be returned to the school from which they came, if *in the judgment of the Board of Guardians* such a course is demanded by the interest of the community or the welfare of the child.    All children under the guardianship of the board shall be visited not less than once a year by an agent of the board, and as much oftener as the welfare of the child demands.    Children received temporarily may not be kept longer than one week, except by order of the police

court or the criminal court." Section 7 authorizes the Commissioners of the District to prescribe the form of records to be kept, methods of accounting, and requires an annual report to be made by the board to the superintendent of charities, which official is given "full powers of investigation and report regarding all branches of the work of the *board,* as well as over all *institutions* in which children are placed by the *board;* and it shall be his duty to recommend annually the appropriations which in his judgment are necessary to the carrying on of its work." The act of March 1, 1901 (31 Stat. at L. 843, chap. 670), carries an appropriation "for board and care of all children committed to the guardianship of said board by the courts of the District, and for the temporary care of children pending investigation or while being transferred from place to place * * * ; Provided, that when the Board of Children's Guardians place any of such children in private families, as far as practicable, such children shall be placed only in such families as are of the same religious denomination or belief as the parents, or last surviving parent of the child, and this appropriation shall not be otherwise available." The act of March 3, 1901 (31 Stat. at L. 1095, chap. 847), "To Enlarge the Powers of the Courts of the District of Columbia in Cases Involving Delinquent Children," provides that the judges of the criminal court and the police court may, in their discretion, commit petty offenders under seventeen years of age *"to the custody and care of the Board of Children's Guardians."* Section 2 prohibits the commitment of such a child to a jail, workhouse, or police station, and authorizes its commitment "to the Board of Children's Guardians *temporarily or permanently, in the discretion of the court,"* and the board is required to make some suitable provision for such children outside the inclosure of any jail, workhouse, or police station. Under sec. 3, for the purpose of aiding the court in the proper disposition of the cases above referred to, the Board of Children's Guardians is "authorized and directed to designate one of its employees as a probation officer, whose duty shall be to make such investigation in cases involving children under seventeen years of age as the court may

direct, to be present in court in order to represent the interests of the child when the case is heard, to furnish the court such information and assistance as the judge may require, and to take charge of any child before and after trial as may be directed by the court." Section 5 of the act provides "that whenever petition or information shall have been filed in any court of the District of Columbia authorized to commit children to the care, custody and guardianship of the Board of Children's Guardians for such commitment of any child," it shall be made to appear that the child is entitled to be committed as aforesaid, and the evidence tends to show that the child has a father or mother, either of whom is able to contribute to its support, but who fails or neglects to do so, steps may be taken to compel such support.

The foregoing constitutes a review of the statutes bearing upon the question in issue down to the time of the enactment of the juvenile court act of March 19, 1906 (34 Stat. at L. 73, chap. 960). Section 4 of that act authorizes the appointment of two probation officers, who are to perform such duties and be governed by such regulations as may be prescribed by the presiding judge. Section 5 clothes the court with power to defer sentence in his discretion in the case of any juvenile offender under the age of seventeen years, "and *parol such child under the care of the chief probation officer* for a probation period discretionary with him, who shall cause said child to return to said court at the end of such term either for sentence or dismissal. *Such paroled child* shall be under the jurisdiction of the juvenile court for such period and shall be subject to such reasonable rules and regulations touching the welfare of the child as may be prescribed by it. In case *such paroled child* shall fail to keep or shall disregard the terms of his or her parole the said court shall have full power to cause said child to be brought before it for further proceedings." Section 8 confers upon the court original and exclusive jurisdiction of all crimes and offenses of persons under seventeen years of age committed against the United States, not capital or otherwise infamous, and not punishable by imprisonment in the penitentiary, com-

mitted in the District, except certain other specified offenses, and the jurisdiction under the various acts hereinbefore mentioned is transferred to that court.   By this section the court is authorized to "try and determine all cases of persons less than seventeen years of age charged with habitual truancy from school, and, in its discretion *to commit them to the Board of Children's Guardians, who are hereby given the care and supervision thereof when so committed."*   The section further provides that no person under seventeen years of age shall hereafter be placed "in any *institution"* supported wholly or in part at the public expense, until the fact of delinquency or dependency has been ascertained and declared by the court, and that all children of the classes liable to be committed to the training school for boys and the training school for girls shall be committed by the juvenile court.   All other children delinquent, neglected, or dependent (with the exceptions heretofore stated), "shall hereafter be committed * * * to the care of the Board of Children's Guardians, *either for a limited period on probation or during minority,* as circumstances may require, but no child once committed to any public *institution* by the order of the juvenile court shall be discharged or paroled therefrom or transferred to another institution without the consent and approval of the said court."   The last-mentioned provision as to the parole of children was repealed to the extent that it applied to the training schools by the acts of February 26, 1909 (35 Stat. at L. 657, chap. 217, Comp. Stat. 1913, sec. 940.), and April 15, 1910 (36 Stat. at L. 300, chap. 164, Comp. Stat. 1913, sec. 9423).   The remaining provisions of the juvenile court act throw no additional light upon the question before us.


*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. F. H. Stephens,* Assistant, for the plaintiff in error.


*Mr. John E. Laskey,* United States District Attorney, and *Mr. W. C. Clephane* for the defendant in error.

Mr. Justice ROBB delivered the opinion of the Court:

Logically the first inquiry will be whether, prior to the establishment of the juvenile court, any court was clothed with the power now claimed to reside in the juvenile court.  And, in determining this question, we must have in mind the general rule that a final judgment cannot be set aside after the close of the term at which it was entered by the court which rendered it, because the case has then passed beyond the control of the court.  *Tubman* v. *Baltimore & O. R. Co.* 190 U. S. 38, 47 L. ed. 946, 23 Sup. Ct. Rep. 777.  Specific authority, therefore, must be found in the statutes for the exercise of such power. The Board of Children's Guardians, as we have seen, is composed of nine members who serve without compensation.   It is to be presumed that they were to be selected because of special fitness for the work, and that Congress was satisfied that they would act wisely and unselfishly in the interests of the children intrusted to their care.   The act of 1892 specifically provides that the board shall have the "care and supervision," and that it shall be the "legal guardian of all children committed to it by the courts."   The act clothes the board with power to place children in private families, board them in institutions, bind them out, or apprentice them, or give them in adoption to foster parents.   It provides for two paid agents of the board, and requires that all children under its guardianship shall be visited not less than once a year by an agent of the board, "and as much oftener as the welfare of the child demands."   All those provisions evidence a purpose and intent on the part of Congress to place upon the board responsibility for the care and custody of children committed to it.   For the fourteen years prior to the establishment of the juvenile court, over which period the activities of the board had extended, we find no word in the statutes authorizing any court to interfere wtih the authority of the board over children committed to it for definite periods.

We will now examine the juvenile court act to determine whether that act contains a grant of the power claimed.   We find that under sec. 5 power is given that court to *defer sentence*

in the case of any offender under the age of seventeen years, and to parole *such child* under the care of the chief probation officer of the court for a probation period, and it is provided that "such *paroled child*" shall be under the jurisdiction of the court during the probation period. The fact that Congress deemed it necessary to make the specific grant of special power to the juvenile court as to this particular class of children negatives the idea of a previous grant to that court of general power in this connection, for had such general power been granted its subsequent mention would have been necessary only by way of limitation or exception in specific instances. Section 8 centers in the juvenile court the powers over juvenile offenders theretofore granted to other courts. In addition, it clothes the court with power to commit truants from school "to the Board of Children's Guardians, who are hereby given the *care and supervision* thereof when so committed." The section further provides that certain delinquent, neglected, or dependent children "shall hereafter be committed" by the juvenile court "to the care of the Board of Children's Guardians, either for a limited period on probation or during minority, as circumstances may require." The prohibition against the discharge, parole, or transfer of any child committed "to any public institution" obviously does not refer to the board, for throughout the acts quoted a careful distinction has been made by Congress between the board and an institution.

We find, therefore, that Congress has clothed the court with continuing jurisdiction over children under deferred sentences, and who are out on parole for a probation period, but that no such power has been given the court over children committed to the Board of Children's Guardians. To find that the court possessed such power would not only do violence to well-established rules of statutory construction and interpretation, as already intimated, but, on the other hand, the independence of the board in this respect is consistent with the juvenile court act, as well as with all other legislation concerning the board, and the express intent of Congress to place upon the board responsibility for the care and supervision of children committed to it.

As to the wisdom or unwisdom of the policy of Congress in this regard we have nothing to do. It is our sole duty to determine and give expression to the intent of the lawmaking power. We think it clear that when the court, in the present case, committed the child in question to the Board of Children's Guardians during minority, the court, at the expiration of the term in which the commitment was made, had no power to set aside the commitment.

The judgment must be reversed and the cause remanded for appropriate proceedings.                *Reversed and remanded.*